GULOTTA, Judge.
Relator, the court appointed attorney for the minor R. B. (a male born August 6, 1978), seeks to set aside the judgment of the trial court placing the child’s custody with a family in the State of Mississippi and seeks also to have the child returned to Louisiana for placement in foster care in this state. We granted certiorari. By direction of this court, the matter was heard on oral argument and submitted on arguments and briefs.
This matter came to the attention of the juvenile court when the child was scarcely one week of age and temporary custody was sought for placement with the Louisiana Health and Human Resources Administration. An order to that effect was rendered by the court on August 14, 1978. Thereafter, on January 23, 1979, after a hearing, the child’s mother was determined “not mentally or financially able to care for the child” and the court ordered that custody remain with the Louisiana state agency. *861 The January 23 order, however, indicated that the matter would be reset pending receipt of a report from the Mississippi Welfare Department. This reference to the Mississippi agency’s report was apparently in response to a January 23, 1979 rule for custody filed on behalf of Mr. and Mrs. A., residents of the state of Mississippi, in which they asserted that the mother of the child desired placement with them. They indicated a desire ultimately to adopt the child.[1]
An August 21, 1979 report from the Mississippi Department of Public Welfare stated that the couple’s trailer had been destroyed by fire and they and their three daughters were living rent free in a two-bedroom house, that Mrs. A. had been “layed off” from her job, that Mr. A.’s $3.60 per hour job was in its slack season, and that the couple had neither savings nor health insurance. The report indicated further that it could not recommend the adoption of the child by Mr. and Mrs. A. because the couple did not meet the financial requirement or stability of environment.
Nonetheless, the Louisiana juvenile court judge on March 13, 1980 placed custody of R. B. with the A. couple, under supervision of the welfare department in Mississippi for six months. The Mississippi Welfare Department was requested to file a report to the court. An August 21,1979 report from the Mississippi Welfare Department did indicate that the A. couple “lived by an unshakeable religious faith, they are physically healthy, they have the capacity and disposition to give love and affection, and they have had the strength to work through a very difficult situation.”
Based upon a July 7, 1980 supplemental letter and report from the Mississippi Department of Public Welfare, the court-appointed attorney for R. B. filed a motion on July 30, 1980 for transfer of custody of the child from the A. family in Mississippi to the Louisiana Department of Health and Human Resources. The July 7, 1980 letter indicated serious reservations about R. B.’s continued placement in the A. home. It requested that the Louisiana authorities “make immediate plans for an alternate placement for this child as it does not appear to be in his best interest to remain in the A. family home.” These reservations were based upon an enclosed June 23, 1980 home-study which pointed out that Mr. and Mrs. A. were unemployed and Mr. A. was receiving a V.A. disability check for $335.00 per month. This was to be discontinued on September 1. The report indicated further that there was no dependable income in the A. home.
According to this report, the Mississippi couple and the children were then living in a home that they were building themselves, and that was inadequate for the family of six because for “two-and-one-half months they have lived without running water in the incomplete bathroom, necessitating that all six of the family members bathe with cold water from the kitchen sink. The house does not have inside walls or ceilings except for the tin roof.” It also lacks screens at the windows or doors. The Mississippi adoption worker stated in the report that the A. couple were unable to meet Randy’s needs.
Thereafter, on November 19, 1980, the court denied another motion for return of the child to Louisiana. It is from this order that this writ application was filed.
The court-appointed attorney for the child contends in this court that R. B. was placed with the Mississippi family in foster care or as a preliminary to possible adoption and that LSA-R.S. 46:1700 et seq., the Interstate Compact on the Placement of Children, applicable in this case, required placement in a “suitable environment.” (See *862 LSA-R.S. 46:1700, article 1(a). According to relators, because the Mississippi home is unsuitable and because the child was sent to Mississippi despite the Mississippi Welfare Department’s recommendation that the placement was not in the interest of the child, the custody order of the Louisiana Juvenile Court should be rescinded and set aside and the custody of R. B. be returned to the Louisiana Health and Human Resources Administration.[2] Relator further complains the trial judge erred in refusing to consider the report from the Mississippi Department of Public Welfare.
The response acknowledges that the Mississippi report was deemed inadmissible by the trial court, as hearsay, and states that the child was not placed with the A.s for adoption but for custody upon a determination that the child was “in need of care” under Articles 15 and 40 of the Code of Juvenile Procedure.[3] Mr. and Mrs. A. contend, under the circumstances, the Interstate Compact is not applicable to the instant case.
Unfortunately, the record in this case is somewhat confusing. According to the transcript of the testimony and proceedings taken before the juvenile court judge on December 6,1979, the purpose of that hearing was to consider the transfer of R. B.’s custody from the Louisiana Department of Health and Human Resources to the A. couple. At that hearing the trial judge considered the first report from the Mississippi Department of Public Welfare and construed that report as a “favorable” one. Because the judge wanted to hear from the child’s mother regarding the possibility of a surrender of the child, and she was not in court at that time, he concluded the hearing without rendering any judgment.
On March 13, 1980, after considering R. B.’s mother’s testimony, in which she expressed her desire that Mr. and Mrs. A. be given custody and that they adopt the child, the court transferred the custody from the Louisiana agency to the Mississippi family. R. B.’s mother stated on March 13 that she would only sign a surrender of the child if the A. couple could adopt, otherwise she would not surrender the child to anyone else.
Prior to issuing the transfer of custody order, the trial judge, in oral reasons, expressed concern with a permanent placement of the child with an ultimate prospect of adoption. His fear was that the child might remain “in limbo” if placement were not made with Mr. and Mrs. A. This transfer was made under the supervision of the proper Mississippi agency and a report was to be received by the court from that agency in six months. In a September 11, 1980 hearing for review of the earlier order granting custody to the A. couple, the trial judge refused to allow into evidence the July 7, 1980 report from the Mississippi Department of Public Welfare. While stating that he would not consider the report as admissible, the judge indicated he had read the report but had not seen anything in it which was “so detrimental” as to require a *863 transfer of custody from Mr. and Mrs. A. at that time. After hearing testimony from a psychiatrist on September 11,1980, the trial judge expressed a desire that the psychiatrist evaluate the Louisiana foster care parents with whom R. B. had been placed earlier by the Louisiana Department of Health and Human Resources and from whom R. B.’s custody was removed and also to evaluate the Mississippi family. At the conclusion the trial judge stated that he would hold the matter open and assign another date to allow either party to submit additional evidence.
The record does not contain any further evidence relating to the September 11,1980 hearing with the exception that on October 23, 1980 the trial judge continued the date for setting the open hearing to December 9, 1980. However, by an ex parte order of November 19, 1980, the trial judge denied the court-appointed attorney for the child’s request for transfer of custody from the Mississippi couple to the Louisiana agency. It is from the denial of the November 19, 1980 motion for transfer of custody that relators sought and were granted writs.
Whether the placement of this child is under the provisions of LSA-R.S. 46:1700 et seq., the Interstate Compact, or under the adoption statutes, or under the appropriate procedures for “a child in need of care”, the one paramount consideration is that the placement be in the interest and for the benefit of the minor child. The academic arguments raised in brief and in oral argument are of secondary importance when considered in light of the child’s welfare.
In this connection, we find error on the part of the trial judge in refusing to admit into evidence the report from the Mississippi Department of Public Welfare. LSA-C.J.P. art. 39 provides that hearsay evidence shall be admissible at the hearing to determine continued custody. Furthermore, LSA-C.J.P. art. 60 provides that any copies of any reports or findings submitted to the court shall be made available to counsel for all parties. This article clearly presupposes the admissibility of these reports. See also, LSA-C.J.P. arts. 81, 82 and 90 which clearly indicate the trial judge may consider predisposition investigation reports or mental evaluations. We note also that the trial judge made the placement of R. B. with Mr. and Mrs. A. under the supervision of the Mississippi Department of Public Welfare and ordered a report to be submitted to the court six months after the placement. Under the circumstances, we conclude the trial judge either erroneously excluded or failed to give proper weight to the July 7,1980 Mississippi Welfare Department’s report and its attached June 23, 1980 case study.
Assuming the welfare department’s reports were accurate, when we consider them, the testimony of the psychiatrist indicating concern for the stability and welfare of the child in A. family’s home, and the emotionally ill mother’s instability (which minimizes reliance on her desires for R. B.’s placement), we are led to conclude that the trial judge erred in refusing to transfer the custody of R. B. from Mr. and Mrs. A. in the state of Mississippi to the Health and Human Resources Administration of the State of Louisiana. Although we are concerned, as is the trial judge, with the ultimate permanent stability of this child, the immediate, temporary welfare of R. B. requires more suitable living conditions than those afforded by the A. family in Mississippi.
Accordingly, the judgment of the trial court permitting continued custody with Mr. and Mrs. A in the state of Mississippi is reversed and set aside and the custody of R. B. is transferred to the Louisiana Health and Human Resources Administration until further orders of the juvenile court.

REVERSED AND RENDERED.

. The order of the juvenile court dated January 23, 1979 directed the Department of Health and Human Resources to make a confidential study to the background and homelife of the A. family, residents of Mississippi, through its equivalent agency in the State of Mississippi and to submit a report to the Louisiana Juvenile Court. Attached to the rule for custody by the A.s was an affidavit of consent for adoption executed by the mother in favor of Mr. and Mrs. A.
We have used initials in referring to the parties.

. LSA-R.S. 46:1700, article 111(d) reads as follows:
“The child shall not be sent, brought or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.”

. LSA-C.J.P. arts. 15 and 40 read as follows (in pertinent part.)
“Art. 15. Juvenile jurisdiction over children; exceptions
Except as otherwise provided herein, a court exercising juvenile jurisdiction shall have exclusive original jurisdiction over the following proceedings:
C. A proceeding in which a child is alleged to be in need of care....”
Art. 40. Grounds for continued custody prior to adjudication.
The court may authorize continued custody of a child prior to adjudication if there are reasonable grounds to believe that:
(6) The parents of the child have neglected or refused, when able to do so, to provide support, education, medical, or other care necessary for his well-being; or
(7) The child has been abandoned by his parents or is otherwise without proper care, custody, or support.”